[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The parties married in Fairfield, Connecticut on October 4, 1997. They resided continuously in this state for at least twelve months before the date of filing the complaint; therefore, the court has jurisdiction. This is the first marriage for the plaintiff, the second marriage for the defendant. There are no minor children who are issue of this marriage.
 I. Facts of the Case[1]
Stefanie and Paul Pilkington have known each other for eleven years. The plaintiff, a thirty-three year old dental hygienist, is a college graduate with a Bachelor of Science degree. The defendant is a thirty-seven year old software engineer. He, too, is a college graduate. At the time of the dissolution both were in generally good health.
This couple met in August 1991. At the time the plaintiff was living with her mother and future stepfather at 170 Bibbins Road in Easton. The following year, at the suggestion of his future mother-in-law, the defendant moved into that Easton home.[2] From 1992 to 1995, these parties lived virtually expense free at the Bibbins Road house.
The plaintiff is a dental hygienist. At the time of the dissolution hearing she worked part time in a local dental office. Because she only worked part time, she did not have any medical benefits. Although the plaintiff worked at two different offices during part of the marriage, she left one position because of personality conflicts with one of those employers. At the time of the dissolution, she earned $30 per hour but worked only 10 hours a week. The defendant is a software engineer. Although his income initially was similar to that of the plaintiff, he changed employers often and as a result received multiple salary increases. Consequently, by the time of the dissolution he had a net annual income of approximately $60,000. That salary included overtime payments. CT Page 4124
A year after the marriage, the plaintiff's health deteriorated. She suffered from dizziness and gastrointestinal problems. During this illness, the plaintiff felt that the defendant was not supportive.
Although briefly ill, the plaintiff was not incapacitated.[3] During the illness, the plaintiff took semi-annual vacations to locations that included Mexico, Central America, South America and Africa. She enjoyed activities such as hiking, canoeing, snorkeling, treetop harness excursions and swimming.
In 1994 the plaintiff's mother refinanced the Easton home, using the proceeds to purchase a beach house in Fairfield. At the time of the refinancing, the plaintiff became a co-owner of the Bibbins Road property.[4] That property was never appraised. This court finds that it has a value of at least $375,000.
The only real joint marital asset was a money market account that contained monetary gifts these litigants received at the time of their marriage. Although this couple did not have any other joint accounts, they did share in all household expenses. These included major repairs to the Bibbins Road home.
Individually, in addition to her interest in the Bibbins Road property the plaintiff owned a 1993 Mustang convertible, a 1987 Grand Am and beachfront property in Belize.[5] Additionally, the plaintiff has a small amount of savings, just enough to cover some of the existing bills. Furthermore, she had personal property that included her engagement ring and wedding band.[6] At the time of the marriage, the defendant had his BMW, a Durango,[7] savings, a credit union account, a 401k account and life insurance. Additionally, the defendant had some furniture that he purchased during his first marriage.
During the marriage, the defendant purchased a motorcycle. The plaintiff purchased some jewelry and artwork. This couple also received and/or purchased a small amount of stock. Additionally, the defendant and his employers contributed to his 401K account.
After the plaintiff filed for divorce, the defendant purchased a home in Trumbull. He sold his BMW and used his portion of the money market account for a down payment.[8] He took some of the furniture from the marital home.[9] The defendant purchased additional furniture and carpeting, paying for this with his credit card. The plaintiff sold her Grand Am and purchased a used Jeep. She paid $14,500 for the vehicle, financing all but $2,000.[10]
CT Page 4125
This couple was fortunate insofar as the plaintiff's mother paid the mortgage and taxes for the Bibbins Road property. During the marriage, the plaintiff paid for her personal expenses and for most of the groceries, her car club membership and the cable bill. The defendant paid for his personal expenses and for all other household expenses. The defendant also paid for the couple's weekend entertainment, semi-annual vacations[11] and for their car insurance.
The couple both contributed labor and money during multiple home renovation projects. The defendant personally spent nearly $20,000 in home repair for the Bibbins Road property. After their separation, the plaintiff continued to live in that home. Her mother continued to pay the mortgage and taxes.
Both individuals have significant debt. The plaintiff entered this marriage with credit card debt. The couple used $2,000 of the money received as wedding gifts in order to reduce that debt. However, during the marriage she continued to charge items that included general living expenses. Additionally, she must make monthly payments for a painting acquired during the marriage as well as the Jeep obtained after the parties separated. Finally she had not paid any of her attorneys fees.[12]
The defendant's credit card debt is the result of purchases he made for his new home after he left the marital residence. Furthermore, he still must make monthly payments for both his motorcycle and Durango.
This couple separated in the year 2000. Fault lies with both parties. The plaintiff craved communication and intimacy, both emotional and physical. She complained that the defendant was not nurturing. Furthermore, the defendant criticized her weight gain.[13] The plaintiff also thought that the defendant was selfishly hoarding his assets.[14] Finally, the plaintiff resented the fact that the defendant had a good relationship with her mother.[15] Counseling during the marriage did not help.
The defendant felt that the plaintiff was a spendthrift who was unwilling to share all household responsibilities. Because the plaintiff worked an average of only 12 hours a week and had a housekeeper paid by her mother, the defendant did not feel he should be responsible for one half of the laundry, cleaning, gardening and cooking responsibilities. He also believed that the plaintiff exaggerated her medical complaints in order to garner sympathy.
 II. Orders CT Page 4126
The court has considered all the facts found in this memorandum of decision in light of the mandate of Connecticut General Statutes Section 46b-81. See Smith v. Smith, 185 Conn. 491, 493, 441 A.2d 140 (1981). The court, having considered all the evidence in light of all relevant statutory criteria, enters the following orders:
1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
2. The defendant shall provide to or for the benefit of plaintiff such medical and dental insurance as may be available through his employment for so long as such benefits are available. The plaintiff shall pay for this coverage. The plaintiff shall also be fully responsible for the cost of her uncovered or unreimbursed medical, dental, psychological or therapy expenses.
3. Neither party shall pay alimony to the other, and each party releases the other from any claim thereof.
4. The plaintiff shall have exclusive use and possession of both the marital home at Bibbins Road in Easton, Connecticut and the property in Belize.
5. The defendant shall have exclusive use and possession of the home on Spruce Street in Trumbull, Connecticut.
6. The plaintiff is awarded all of the furniture and furnishings currently in the marital home.
7. Each party shall retain the personal property and motor vehicles listed on their respective affidavits. Each shall be responsible for his or her own registration, tax and insurance costs.
8. The defendant shall retain all bank accounts and stock listed on his financial affidavit. In consideration thereof the defendant shall transfer to the plaintiff the sum of one thousand five hundred ($1,500) dollars.
9. The defendant shall maintain his separate interest in his pension plan, deferred compensation and 401k account free and clear of any claim by the plaintiff.
10. Each party is responsible for the debt as listed on their respective financial affidavits. CT Page 4127
11. Each party shall be responsible for his/her own attorneys fees.
12. Except to the extent more specifically set forth herein, each order of the court is to be effectuated within thirty (30) days of the date of this decision.
13. Except to the extent more specifically set forth herein, each party shall retain all assets as shown on their respective financial affidavits free and clear of any claim or demand by the other, and each party shall be responsible for all liabilities as shown on their financial affidavits and shall indemnify and hold harmless the other party from liability therefore.
Judgment shall enter in accordance with the foregoing orders.
JULIA DiCOCCO DEWEY, JUDGE